**SO ORDERED.**

**SIGNED this 24th day of June, 2015.**



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| ALAN J. MURRAY and<br>CATHERINE A. MURRAY,<br><br>　　　　　DEBTORS. | CASE NO. 14-22253<br>CHAPTER 13 |
| ALAN J. MURRAY and<br>CATHERINE A. MURRAY,<br><br>　　　　　PLAINTIFFS,<br><br>v.<br><br>EDUCATIONAL CREDIT<br>MANAGEMENT CORPORATION,<br><br>　　　　　DEFENDANT. | ADV. NO. 15-6016 |

### MEMORANDUM OPINION AND ORDER GRANTING
### DEFENDANT'S MOTION TO DISMISS

Defendant Educational Credit Management Corporation (ECMC) moves under

Federal Rule of Bankruptcy Procedure 7012(b)(1) and (h) to dismiss Plaintiffs'

Complaint to Determine Dischargeability of Student Loan Debts (Complaint) on the premise that the claim is not ripe for adjudication. Defendant appears by N. Larry Bork of Goodell, Stratton, Edmonds & Palmer, L.L.P. Plaintiff-Debtors oppose the motion, and they appear by George J. Thomas of Phillips & Thomas LLC.[1]

**BACKGROUND FACTS.**

Alan and Catherine Murray (Plaintiffs) filed for relief under Chapter 13 on September 23, 2014. Their unsecured debts as reported on Schedule F included approximately $263,000 in student loan debts, the total of two loans, one for each Debtor. Debtors filed a proposed plan with their petition. An amended plan was filed on October 29, 2014, and was confirmed by an order filed December 23, 2014. The plan provides for payments of $500 per month for a period of 60 months.

On March 25, 2015, six months after filing their petition, Debtors filed their Complaint requesting the Court to determine that because of undue hardship, their student loan debts do not fall within the discharge exception of § 523(a)(8).[2] ECMC moves to dismiss under Federal Rule of Bankruptcy Procedure 7012(b)(1), providing that a party

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). There is no objection to venue or jurisdiction over the parties.

[2] The original defendants were Navient Solutions Inc. and Sallie Mae. By an order filed on April 29, 2015, ECMC was added as a defendant. By a stipulation approved by the Court on May 22, 2015, Navient Solutions Inc. and Sallie Mae were dismissed, leaving ECMC as the sole defendant.

may assert the defense of lack of subject matter jurisdiction by motion, and Federal Rule of Bankruptcy Procedure 7012(h)(3), providing "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." ECMC predicates lack of subject matter jurisdiction upon the doctrine of ripeness.

**DISCUSSION.**

"The ripeness doctrine aims to prevent courts 'from entangling themselves in abstract disagreements' by avoiding 'premature adjudication.'"[3] "Ripeness reflects constitutional considerations that implicate 'Article III limitations on judicial power,' as well as 'prudential reasons for refusing to exercise jurisdiction.'"[4] "In evaluating a claim to determine whether it is ripe for judicial review, [the Supreme Court] consider[s] both 'the fitness of the issues for judicial decision' and 'the hardship of withholding court consideration.'"[5] In the Tenth Circuit, "ripeness analysis focuses on 'whether the harm asserted has matured sufficiently to warrant judicial intervention.'"[6] "Ripeness is peculiarly a question of timing."[7] As for hardship from withholding judicial action, the

---

[3] *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (*quoting Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 105 (1977)).

[4] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670, n. 2 (2010) (*quoting Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57, n. 18 (1993)).

[5] *Id.* (*quoting Nat'l Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 808 (2003)).

[6] *Awad*, 670 F.3d at 1124 (*quoting Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008)).

[7] *Onyeabor v. Centennial Pointe Owners Ass'n (In re Onyeabor)*, 487 B.R. 599, 2013 WL 819726 at *4 (unpub. op., 10th Cir. BAP 2013) (*citing Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974)).

court asks "whether the challenged action creates a direct and immediate dilemma for the parties."[8]

Determination of whether Debtors' claim is ripe requires consideration of the law concerning the discharge of student loan debts. In a Chapter 13 case, upon the completion of all payments under the plan, debtors are generally granted a discharge of all debts provided for by the plan, except certain debts provided for under § 1322(b)(5) or covered by some subsections of § 523(a). Those debts excepted from discharge include student loans, unless, as provided in § 523(a)(8), "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents."[9] A debtor wishing to discharge a student loan debt must file an adversary proceeding seeking a determination of dischargeability upon proof of undue hardship. The Tenth Circuit has adopted the three-part *Brunner* test for undue hardship, which requires the debtor to prove:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.[10]

---

[8] *Awad*, 670 F.3d at 1125 (*quoting New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995)).

[9] 11 U.S.C. § 523(a)(8).

[10] *Educational Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1307 (10th Cir 2004) (*quoting Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2nd Cir. 1987)).

Bankruptcy Rule 4007 addresses the determination of the dischargeability of a debt. Subsection (a) provides that a debtor may file a complaint to obtain a determination of the dischargeability of any debt. As to the timing of such a complaint, subsection (b) provides that a complaint other than under § 523(c) "may be filed at any time."

Neither the Tenth Circuit Court of Appeals nor the lower courts in the district have ruled on a ripeness challenge to the filing of a complaint seeking a determination of the dischargeability of a student loan debt in a Chapter 13 case substantially before the completion of plan payments. In *Swanson*,[11] this Court did reject a ripeness challenge to a Chapter 12 debtor's adversary proceeding, filed before a Chapter 12 plan was proposed, that sought a determination of the dischargeability of his federal income tax debt. When seeking dismissal on ripeness grounds, the IRS relied on Chapter 13 student loan dischargeability cases.[12] The Court distinguished those cases, where "[d]etermining the dischargeability of such [student loan] debts long before a debtor will qualify for a discharge simply adds to the speculative nature of the required soothsaying," from the situation presented where "the facts that control whether the Debtor's obligations to the IRS are dischargeable have already occurred."[13] The Court concluded that the dischargeability of the debts was ripe for determination because the controlling facts "ha[d] already occurred and the dischargeability of the debts will probably affect how the

---

[11] *Swanson v. Internal Revenue Service (In re Swanson)*, 343 B.R. 678 (Bankr. D. Kan. 2006).

[12] *Id.* at 681.

[13] *Id.* at 681.
5

Case 15-06016    Doc# 38    Filed 06/24/15    Page 5 of 13

Debtor chooses to structure his Chapter 12 plan."[14]  Although Debtors rely on *Swanson* as supporting their position, it is sufficiently different to be of little help.  Here, not all of the facts relevant to the determination of undue hardship at the time of discharge have occurred, and a finding of dischargeability at this stage of the Chapter 13 case will not determine the future course of the bankruptcy proceeding.  The harm Debtors allege is the loss of the protection of the automatic stay and the continued accrual of interest on their student loan debts if they are required to wait to file such a proceeding until after plan completion.[15]

The circuit courts and bankruptcy courts are divided on the issue presented.  Some courts have held that because the discharge of debts in a Chapter 13 case occurs, if at all, after completion of plan payments, a claim of undue hardship is not ripe until sometime close to the date that a discharge is anticipated.  ECMC urges the Court to follows these cases.  For example, in *Bender*,[16] a Chapter 13 debtor filed a proceeding to determine the dischargeability of a student loan debt four months after filing the case and three-and-a-half years before she would be entitled to a discharge.  The bankruptcy court ruled in the debtor's favor.  On appeal, the district court reversed, finding the adversary petition was not ripe for adjudication.  The Eight Circuit Court of Appeals affirmed.  The court reasoned that the factual question to be determined in the adversary proceeding was

---

[14] *Id.* at 683.

[15] Doc. 17 at 3-5.

[16] *Bender v. Educational Credit Mgmt. Corp. (In re Bender)*, 368 F.3d 846 (8th Cir. 2004).

"whether there is undue hardship at the time of discharge, not whether there is undue hardship at the time that a § 523(a)(8) proceeding is commenced."[17] Although as a matter of administrative convenience, it makes sense to file the adversary proceeding some time before the actual date of the anticipated discharge, the proceedings should take place close to that date "so the court can make its determination in light of the debtor's actual circumstances at the relevant time."[18] The consequences to the debtor were rejected as a basis to find ripeness, since during the period between the date of the filing of the petition and the date of plan completion, the debtor was protected by the automatic stay from any attempts to collect the debt.

Bankruptcy courts have reached the same conclusion. *Raisor*[19] is an example. In that case, the court dismissed as premature a proceeding to determine the partial dischargeability of a student loan when the proceeding was filed approximately seven months after the filing of a Chapter 13 petition and approximately three years before the debtors' plan was scheduled for completion. The ruling rested upon the court's conclusion that all of the factors relevant to a hardship discharge could not be addressed fully until later in the case, and that the congressional intent of preserving student loans from discharge could best be followed by accurately analyzing the debtors' financial

---

[17] *Id*. at 848.

[18] *Id*.

[19] *Raisor v. Educational Loan Serv. Ctr., Inc. (In re Raisor)*, 180 B.R. 163 (Bankr. E.D. Tex. 1995).

condition at the time a discharge is granted. The provision of Rule 4007(b) that a complaint to determine dischargeability could be filed at any time was held not to be controlling. "The lack of a time limitation should not be interpreted as meaning that any proceeding filed pursuant to Rule 4007(b) is ripe for adjudication. Bankruptcy Rule 4007 does not determine whether a proceeding is ripe for adjudication but merely permits the filing of certain types of proceedings when the matter *is* ripe."[20] *Raisor* was followed by *Pair*,[21] where the debtor filed a dischargeability complaint three months after the Chapter 13 petition. The complaint was dismissed without prejudice to refiling no earlier than six months before the debtor's discharge was due to be entered. ECMC also cites additional bankruptcy court decisions holding that complaints seeking determinations of the dischargeability of student loan debts because of undue hardship soon after the filing of a Chapter 13 petition are premature.[22]

A number of courts have held that the ripeness doctrine does not preclude an undue hardship determination shortly after the filing of a Chapter 13 petition. Debtors urge the Court to follow these cases. In *Ekenasi*,[23] the debtor filed a petition under Chapter 13 in August 1997, his five-year plan was confirmed in February 1998, and in

---

[20] *Id*. at 167.

[21] *Pair v. United States - U.S. Dep't of Educ. (In re Pair)*, 269 B.R. 719, 720-21 (Bankr. N.D. Ala. 2001).

[22] *Walton v. Sallie Mae Educ. Credit Fin. Corp. (In re Walton)*, 340 B.R. 892, 893-95 (Bankr. S.D. Ind. 2006); *Soler v. United States (In re Soler)*, 250 B.R. 694, 695-97 (Bankr. D. Minn. 2000).

[23] *Ekenasi v. Educ. Res. Inst. (In re Ekenasi)*, 325 F.3d 541 (4th Cir. 2003).

8

May 1998, he filed a proceeding seeking discharge of his student loan debts. In January 2001, the bankruptcy court entered an order granting Ekenasi a complete discharge of his student loan debts for undue hardship. The creditors appealed, and the district court affirmed. On appeal to the Fourth Circuit Court of Appeals, that court recognized that an undue hardship discharge in a Chapter 13 case is premised upon a prediction of what the debtor's situation will be at the conclusion of the chapter 13 plan, but declined "to adopt a hard and fast rule which would preclude bankruptcy courts from ever entertaining a proceeding to discharge student loan obligations until at or near the time the debtor has completed payments under a confirmed Chapter 13 plan."[24] The court stated, "The text of the pertinent statues does not prohibit such an advance determination and, although cognizant of the policy concerns expressed by Congress in its refusal to discharge such loans, we can envision exceptional circumstances where the *Brunner* factors could be predicted with sufficient certainty in advance of the conclusion of a Chapter 13 proceeding."[25]

In *Coleman*,[26] the Ninth Circuit thoroughly considered the two components of

---

[24] *Id.* at 547.

[25] *Id.* The Court went on to observe: "Nevertheless, while we do not preclude debtors from seeking a discharge determination of student loan debts prior to the completion of payments under a confirmed Chapter 13 plan, our cognizance of those policy concerns also counsels us to emphasize that it will be most difficult for a debtor, who has advanced his education at the expense of the government-guaranteed loans, to prove with the requisite certainty that the repayment of his student loan obligations will be an 'undue burden' on him during a significant portion of the repayment period of the student loans when the debtor chooses to make that claim far in advance of the expected completion date of his plan." *Id.*

[26] *Educational Credit Mgmt. Corp. v. Coleman (In re Coleman)*, 560 F.3d 1000 (9th Cir. 2009).

ripeness under *Abbott*,[27] "'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration,'"[28] and then agreed with the Fourth Circuit that an undue hardship determination can be ripe substantially in advance of plan completion. The fitness test operates to delay consideration of the issue until the facts have been well-developed, but does not preclude court decision where "delay is unlikely to provide much, if any, additional benefit to the bankruptcy court's resolution of the issue."[29] As to the determination of undue hardship sufficient to support discharge, the court found that a finding of lack of ripeness "due to the factual contingency of the debtor's financial situation makes little sense since the court must always speculate on the debtor's financial situation years into the future."[30] The finding of fitness for decision was found to be consistent with the Code as "there is no clause in § 523(a)(8) specifying that undue hardship must exist exactly at the time of discharge."[31] Hardship to the debtor from postponing a decision was also found to support a finding of ripeness. "Here, the hardship to Coleman is committing to a Chapter 13 plan for three to five years without any guarantee that her student loans will be discharged at the end of this time period,"[32]

---

[27] *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967).

[28] *Coleman*, 560 F.3d at 1006 (*quoting Abbott*, 387 U.S. at 149).

[29] *Id*. at 1009.

[30] *Id*.

[31] *Id*. at 1010.

[32] *Id*.

10

instead of proceeding under Chapter 7 where undue hardship could be litigated immediately after filing for bankruptcy relief. Debtors also cite two bankruptcy court decisions rejecting ripeness as a basis to dismiss a dischargeability complaint filed early in a Chapter 13 case.[33]

The Court finds that the cases cited by ECMC are better reasoned and concludes that the present case is not ripe for decision. As to the fitness element of ripeness, the discharge exception of § 523(a)(8) requires the Court to project the hardship to the debtor if the student loan is not discharged. In a Chapter 13 case, § 1328(a) provides that a discharge does not occur until the completion of plan payments. The Code thereby contemplates that the undue hardship finding will be based upon a projection of the debtor's anticipated post-bankruptcy financial circumstances. Generally, this projection is best made when all of the debtor's pre-discharge financial circumstances are known and the post-bankruptcy period is imminent.[34] Projecting whether the payment of student loans after discharge would cause an undue hardship is at best a difficult process; hearing the matter years before the beginning of the projection period would only compound the difficulty. In addition, an early ruling could result in procedural issues which can be avoided if the hearing is delayed. For example, if the Court were to find the absence of

---

[33] *Strahm v. Great Lakes Higher Educ. Corp. (In re Strahm)*, 327 B.R. 319 (Bankr. S.D. Ohio 2005); *Hoffer v. American Educ. Servs. (In re Hoffer)*, 383 B.R. 78 (Bankr. S.D. Ohio 2008); *Coleman v. Educational Credit Mgmt. Corp. (In re Coleman)*, 333 B.R. 841 (Bankr. N.D. Cal. 2005).

[34] The Court declines to adopt a hard and fast rule that would preclude in all cases the consideration of an undue hardship discharge of a student loan in a Chapter 13 case until near the time of discharge. It is possible that in rare circumstances, the issue could be ripe.

an undue hardship at a hearing held three to four years before discharge, would the debtor, if his or her circumstances changed, be entitled to another hearing on the same issue after completing all plan payments? On the other hand, if undue hardship were found but the debtor's circumstances changed before discharge, would the creditor be entitled to challenge the prior ruling? Further, there is no guarantee early in a Chapter 13 case that a debtor will make all plan payments or otherwise be entitled to a discharge. Trial on the issues early in the bankruptcy case could prove to be a waste of the parties' and the Court's resources.

Debtors' plan provides for payment over 60 months. This case was filed on September 13, 2014, and the adversary proceeding seeking discharge of the student loan debts was filed on March 23, 2015. In the ordinary course of proceedings in this Court, the matter would come to trial in late 2015 or early 2016, requiring the Court to predict Debtors' financial circumstances in the year 2019 and thereafter, without the benefit of evidence regarding their finances during the pendency of their bankruptcy case. Debtors have provided no suggestion of unusual facts indicating that their financial circumstances are immutable.

In addition, the Court rejects Debtors' argument that they will suffer harm if the ruling is delayed. In their brief opposing ECMC's motion to dismiss, Debtors assert:

> The student loans in question are currently about $265,000.
> Interest and penalties continue to accrue on this huge amount.
> To permit this matter to sit unresolved for several years would
> simply add to this amount, and be of no good for either party.
> To require the Debtors to pursue this adversary after their

12

> receiving a discharge would . . . definitely harm them.
> Adversaries of this type can take a long time to resolve. They
> would lose the automatic stay protections against the creditor,
> and the closing of the case would be delayed.[35]

This argument is predicated upon two misconceptions. First, if the hardship trial were to be held several years before completion of Debtors' plan and the Court found undue hardship, the discharge could not be entered immediately. The discharge of the student loan debts, like the discharge of other debts, would have to await entitlement to a discharge under § 1328. Second, a finding that the Complaint is not presently ripe does not mean that the matter cannot be heard until after a discharge is entered. Rather, a proceeding to include student loans in a Chapter 13 discharge would be ripe if filed not more than approximately twelve months before the completion of plan payments, while the automatic stay remains in place. The Court finds Debtors have not identified any harm they will suffer if the trial on the discharge of their student loans is delayed.

**CONCLUSION.**

For the foregoing reasons, the Court grants ECMC's motion to dismiss this proceeding for lack of ripeness. This dismissal shall be without prejudice, so Debtors may refile a similar proceeding not more than twelve months before plan completion is anticipated.

**IT IS SO ORDERED.**

# # #

---

[35] Doc. 17 at 7.